STATE OF CONNECTICUT *v.* MICHAEL ROSS
(13224)
(13225)
(13226)

PETERS, C. J., CALLAHAN, BERDON, NORCOTT and DUPONT, Js.

Decision released May 5, 1993

*Michael A. Fitzpatrick,* special public defender, in support of the motion.

*Harry Weller,* assistant state's attorney, in opposition to the motion.

PER CURIAM. The defendant, Michael Ross, who has appealed from the judgments of conviction of capital felony and from the imposition of the death sentence after those convictions, has filed a motion for enlargement of the class of similar cases that we will consider

in determining whether his death sentence is justified in light of the proportionality requirement of General Statutes § 53a-46b (b) (3).[1] Exercising its rule-making authority, this court has determined to limit the class of similar cases, in accordance with the requirements of the statute, to cases in which the conviction of a capital felony after trial was followed by a hearing to consider the imposition of the death penalty. Practice Book § 4066A (b).[2] In the particular circumstances of this defendant's appeal, we have allowed the class of similar cases to be enlarged to include the defendant's two

[1] General Statutes § 53a-46b (b) (3) provides: "REVIEW OF DEATH SENTENCE. . . .

"(b) The supreme court shall affirm the sentence of death unless it determines that . . . (3) the sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant."

[2] Practice Book § 4066A (b) provides: "[BRIEFS]——REVIEW OF DEATH SENTENCES PURSUANT TO GENERAL STATUTES § 53a-46b . . . .

"(b) For the purpose of reviewing the issue of disproportionality pursuant to Gen. Stat., § 53a-46b (b) (3), the briefs of the parties shall contain appendices setting forth the circumstances of the crimes that are claimed to be similar to that of which the defendant has been convicted and the characters and records of the defendants involved therein so far as these are ascertainable from the transcripts of those trials and hearings on the imposition of the death penalty or may be judicially noticed. Only those capital felony cases that have been prosecuted in this state after October 1, 1973, and in which hearings on the imposition of the death penalty have taken place, whether or not the death penalty has been imposed, shall be deemed eligible for consideration as 'similar cases,' unless the court, on application of a party claiming that the resulting pool of eligible cases is inadequate for disproportionality review, shall modify this limitation in a particular case. Any such application shall identify the additional case or cases claimed to be similar and set forth, in addition to the circumstances of the crime and the character and record of the defendant involved, the provisions of the applicable statutes pertaining to the imposition of the death penalty with citations of pertinent decisions interpreting such provisions.

"Any such application shall be filed within thirty days after the delivery date of the transcript ordered by the appellant, or, if no transcript is required or the transcript has been received by the appellant prior to the filing of the appeal, such application shall be filed within thirty days after filing the appeal."

murder convictions for which consecutive life sentences were imposed as a result of his entering pleas of nolo contendere after the original charges of capital felony were reduced.

The defendant now asks that the class of similar cases be further amended in one of two ways. His more expansive proposal is to enlarge the class of similar cases to include any case prosecuted after October 1, 1973, in which the state *could have charged the defendant with a capital felony* and that resulted in a conviction of not less than manslaughter in the first degree. General Statutes §§ 53a-55, 53a-55a. His more limited proposal is to enlarge the class of similar cases to include all capital felony cases prosecuted after October 1, 1973, that resulted in *a conviction of not less than manslaughter in the first degree* following a plea or a trial.

We unanimously decline to accept the defendant's more expansive proposal. That proposal does not differ materially from the proposals that we rejected when, in exercising our rule-making authority, we defined the class of similar cases to include "[o]nly those capital felony cases that have been prosecuted in this state after October 1, 1973, and in which hearings on the imposition of the death penalty have taken place . . . ." Practice Book § 4066A (b).

With regard to the defendant's more limited proposal, we unanimously agree, in the circumstances of this case, to amend our existing definition of the class of similar cases to add any case in which a capital felony conviction has been obtained and the conviction was followed not by a hearing on the imposition of the death penalty but by an imposition of a sentence other than death, either by virtue of a plea agreement or by virtue of the fact that the state did not seek the death penalty. If this predicate has been met, and if the record

contains sufficient information to enable a relevant comparison to be undertaken, then we will consider such cases as part of the class of similar cases.

We decline, however, to include in the relevant class any cases in which the prosecution has failed to establish the commission of a capital felony. In the first appeal from the imposition of a death sentence, it is inevitable that proportionality review will have to be undertaken against the background of a limited number of similar cases. That inevitability warrants intensive scrutiny of the cases that are similar but does not justify distortion of the principle of similarity.[3]

Under the express provisions of General Statutes §§ 53a-35a and 53a-46a,[4] only conviction of a capital felony subjects a defendant to the possible imposition

---

[3] In the special circumstances of this case, we have granted the defendant's preliminary motions for permission to file an out-of-time application to expand the universe of cases for proportionality review, and have permitted him to file a supporting memorandum exceeding the normal page limit. We are unpersuaded that oral argument would provide any further enlightenment in deciding the merits of his motion.

[4] General Statutes § 53a-35a provides in relevant part: "IMPRISONMENT FOR ANY FELONY COMMITTED ON OR AFTER JULY 1, 1981: DEFINITE SENTENCES; TERMS AUTHORIZED. For any felony committed on or after July 1, 1981, the sentence of imprisonment shall be a definite sentence and the term shall be fixed by the court as follows: (1) For a capital felony, a term of life imprisonment without the possibility of release unless a sentence of death is imposed in accordance with section 53a-46a . . . ."

General Statutes § 53a-46a provides in relevant part: "HEARING ON IMPOSITION OF DEATH PENALTY. AGGRAVATING AND MITIGATING FACTORS. (a) A person shall be subjected to the penalty of death for a capital felony only if a hearing is held in accordance with the provisions of this section.

"(b) For the purpose of determining the sentence to be imposed when a defendant is convicted of or pleads guilty to a capital felony, the judge or judges who presided at the trial or before whom the guilty plea was entered shall conduct a separate hearing to determine the existence of any mitigating factor concerning the defendant's character, background and history, or the nature and circumstances of the crime, including any mitigating factor set forth in subsection (g), and any aggravating factor set forth in subsection (h)."

of a death sentence. Only conviction of a capital felony occasions a hearing into mitigating and aggravating factors to determine whether the death penalty should be imposed. Only conviction of a capital felony will put on the record the circumstances that are relevant to the proportionality review mandated by § 53a-46b (b) (3).

In view of this unambiguous statutory pattern, the propriety of a death sentence imposed for conviction of a capital felony cannot appropriately be compared with sentences imposed as the result of convictions of less serious crimes. As a matter of law, sentences imposed as the result of such other convictions have not been "imposed in similar cases," as § 53a-46b (b) (3) requires.

The motion is granted in part to enlarge the class of similar cases for the purposes of this appeal to include all convictions of a capital felony after October 1, 1973, whether such convictions resulted from a trial or from a plea and whether or not such convictions were followed by the imposition of the death penalty.

In this opinion PETERS, C. J., CALLAHAN, NORCOTT and DUPONT, Js., concurred.

BERDON, J., dissenting. The defendant, Michael Ross, moves to expand the universe of cases because the present rules and case law are inadequate for proportionality review. The defendant lists only fifteen cases that can now be considered (including four cases in which he was a defendant).

I would grant the defendant's request for oral argument on the motion. Certainly, we should allow both the defendant and the state to supplement their written argument and respond to our questions on a matter as important as determining whether the death penalty should be imposed.

First, I must put the defendant's request in its proper perspective, as the New Jersey Supreme Court did in *State* v. *Ramseur,* 106 N.J. 123, 524 A.2d 188 (1987). "Proportionality review has a function entirely unique among the review proceedings in a capital proceeding. Proportionality review, in the context of a capital sentencing scheme, is not appellate review to ensure that the aggravating factors outweigh beyond a reasonable doubt all the mitigating factors . . . or to determine if the death sentence is disproportionate to the crime in violation of the ban against cruel and unusual punishment. That death is not disproportionate in the sense of being a cruel and unusual punishment is presumed by the nature of the review. . . . Rather, the purpose of review here is of a different sort. . . . It purports to inquire instead whether the penalty is nonetheless unacceptable in a particular case because [it is] disproportionate to the punishment imposed on others convicted of the same crime.

"The heightened concern in a capital case for whether a sentence is disproportionate in this sense is twofold and derives from the finality of the result and the risk that the proceedings are vulnerable to the influence of impermissible considerations. First, the imposition of death by public authority is . . . profoundly different from all other penalties. . . . Because of this fundamental distinction between the death penalty and all other punishments, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case. Proportionality review assists us in assuring that we have designed procedures which are appropriate to the decision between life and death and . . . [that] we have followed those procedures.

"Proportionality review further acts as a check against the random and arbitrary imposition of the death penalty by an aberrant jury. . . . [G]iven the

emotions generated by capital crimes, it may well be that juries, trial judges, and appellate courts considering sentences of death [may be] affected by impermissible considerations. . . . Discrimination on the basis of race, sex, or other suspect characteristic cannot be tolerated. As the Florida Supreme Court stated: [Proportionality review] by this Court guarantees that the reasons present in one case will reach a similar result to that reached under similar circumstances in another case. No longer will one man die and another man live on the basis of race, or a woman live and a man die on the basis of sex. If a defendant is sentenced to die, this Court can review that case in light of the other decisions and determine whether or not the punishment is too great. Thus, the discretion charged in *Furman* v. *Georgia*, [408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972),] can be controlled and channeled until the sentencing process becomes a matter of reasoned judgment rather than an exercise in discretion at all. . . .

"Proportionality review therefore is a means through which to monitor the imposition of death sentences and thereby to prevent any impermissible discrimination in imposing the death penalty." (Citations omitted; internal quotation marks omitted.) Id., 326–27.

Why this court is so restrictive in expanding the universe of cases to be considered is beyond my comprehension. Allowing a case to be included in the universe under our rules of practice; Practice Book § 4066A (b); does not mean that the case is automatically considered a "similar" case under proportionality review mandated by General Statutes § 53a-46b. Certainly, to grant the defendant's alternative request disadvantages no one—the state, the defendant or the court— except that it may mean more work for all of us in attempting to sort out those cases that are "similar" from those that are not. I would prefer to rely on the

good faith efforts of the parties to include only cases that are similar. When so much is at stake—life or death—we should have all the relevant information before us so we can make a just decision.

The majority of this court today does grant partial relief for the defendant by our sua sponte modification of the request, but we do not have any information as to whether that relief will increase the universe of cases and if so, the extent of the increase. On the basis of the briefs before me today, and without the benefit of oral argument, I would grant the defendant's alternative proposal, which he estimates would increase the universe by approximately twenty-five additional cases. That proposal would "include all capital felony cases prosecuted in Connecticut after October 1, 1973, which likewise resulted in a conviction of at least Manslaughter in the First Degree (General Statutes §§ 53a-55, 53a-55a) following a plea or trial."

Accordingly, I dissent.